UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOANNE M. CLAWSON,

                       Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.

**REPORT AND RECOMMENDATION**

10-CV-377
(LEK/VEB)

---

## I. INTRODUCTION

In August of 2007, Plaintiff Joanne M. Clawson filed an application for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she became unable to work on January 22, 2007, due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorney, Peter W. Antonowicz, Esq., commenced this action on March 31, 2010, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on August 21, 2007, alleging disability beginning on January 22, 2007. (T at 51-52).[1] The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). On December 7, 2007, Plaintiff waived her right to a personal appearance before the ALJ and consented to having her applications decided on the written evidence. (T at 63).[2]

On May 20, 2008, ALJ Barry E. Ryan issued a written decision denying Plaintiff's applications. (T at 10-19). The ALJ's decision became the Commissioner's final decision on February 25, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 2-6).

Plaintiff, through counsel, timely commenced this action on March 31, 2010. (Docket No. 1). The Commissioner interposed an Answer on July 28, 2010. (Docket No. 8). Plaintiff filed a supporting Brief on November 24, 2010, (Docket No. 14). The Commissioner filed a Brief in opposition on January 10, 2011. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 9).

[2] The transcript of a hearing conducted on April 20, 2010, was included as part of the administrative record. (T at 20-48). That hearing was held pursuant to a subsequent application for benefits and was erroneously included as part of the record in this case. (Docket No. 15, at p. 2, n.2).

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further administrative proceedings.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  He further determined that Plaintiff had not engaged in substantial gainful activity since January 22, 2007, the alleged onset date. (T at 12).  The ALJ concluded that Plaintiff had the following combination of impairments, which he considered "severe" as defined under the Act: rotator cuff tendonitis, bursitis, and capsulitis - right shoulder and right hand numbness of undetermined cause. (T at 13).

However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 15).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

the full range of light work, as defined in 20 C.F.R. § 416.967 (b). (T at 16). He further found that Plaintiff could perform her past relevant work as a flower sales clerk. (T at 18).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability between January 22, 2007, the alleged onset date, and May 20, 2008, the date of the ALJ's decision. (T at 19). As noted above, the ALJ's decision became the Commissioner's final decision on February 25, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 2-6).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers two (2) principal arguments in support of that position. First, Plaintiff contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence. Second, Plaintiff argues that the ALJ did not properly evaluate her credibility. This Court will address both arguments in turn.

#### a. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other

limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

As noted above, the ALJ concluded that Plaintiff retained the RFC to perform the full range of light work as defined under 20 C.F.R. § 404.1567 (b) and 416.967 (b). (T at 16). Specifically, the ALJ found that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday. (T at 16). The ALJ determined that Plaintiff was limited with regard to pushing/pulling with her upper extremities, but otherwise had no exertional or non-exertional limitations. (T at 16).

For the following reasons, this Court finds that a remand is necessary for further development of the record. In sum, the record was not adequately developed with regard to Plaintiff's exertional and non-exertional limitations.

In September of 2007, Dr. William Krause, Plaintiff's treating physician, opined that Plaintiff was disabled and should be eligible for benefits. (T at 174). In February of 2008, Dr. Krause indicated that Plaintiff "cannot work or lift with the present symptoms." (T at 197).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362

F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In the present case, the ALJ summarily dismissed Dr. Krause's opinion, finding it "not supported by objective medical evidence or clinical findings." (T at 18). At the outset, this Court is mindful that Dr. Krause's statement that Plaintiff is disabled and entitled to benefits (T at 174) is a decision reserved to the Commissioner and not entitled to "any special significance." 20 C.F.R. § 404.1527(e) (1), (3). However, ALJs are obliged to "make every reasonable effort to recontact [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear." SSR 96–5p.

In this regard, it is well-settled that the ALJ has an "affirmative duty to develop the

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

In this case, it appears the ALJ made no attempt to re-contact Dr. Krause. The Commissioner defends the ALJ's decision by arguing that sufficient evidence existed in the record to determine that Plaintiff was not disabled. However, none of Plaintiff's treating physicians offered an opinion of her functional abilities. In particular, they did not assess with particularity the impact of Plaintiff's pain or her functional abilities. The only specific finding in that regard was Dr. Krause's assessment that Plaintiff "cannot work or lift with the present symptoms." (T at 197).

In such a circumstance, "the ALJ had an affirmative duty . . . to develop the medical record and request that plaintiff's treating physicians assess plaintiff's functional capacity." Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept.17, 2008); see also 20 C.F.R. § 404.1513(b)(6) (a "medical report" should include "[a] statement about what [the claimant] can still do despite [her] impairment(s)"); Lawton v. Astrue, 2009 WL 2867905, at *16 (N.D.N.Y. Sept.2, 2009)("The ALJ's failure to re-contact [plaintiff's treating physician] in an

9

attempt to obtain an RFC or medical source statement constitutes a breach of the ALJ's duty to develop the record, and provides a basis for remand.").

When explaining his decision, the ALJ noted that there was "no supporting medical source statement from any treating source" and found that Plaintiff's allegations of disabling pain were "not supported by expert medical opinions/assessments of treating doctors." (T at 18). As to the lack of a medical statement concerning Plaintiff's functional abilities, as noted above, the ALJ was obliged to seek out such a statement.

In addition, contrary to the ALJ's finding, the record contains support for Plaintiff's claims of disabling pain. Dr. Nanavati, an orthopedic surgeon, examined Plaintiff at Dr. Krause's request. Dr. Nanavati assessed rotator cuff tendinitis, bursitis, and capsulities in the right shoulder. (T at 166). Dr. Nanavati indicated that Plaintiff's right shoulder "clinically examines as though *significant* bursitis, tendinitis, and capsulitis issues." (T at 166)(emphasis added). He also noted possible carpal tunnel syndrome, vague peripheral neuropathy (right hand) and possible arterial insufficiency (right hand). (T at 166).

Although Dr. Nanavati noted no restrictions regarding Plaintiff's use of her arm, he left to Dr. Krause's judgment the question of whether Plaintiff's pain prevented her from working. (T at 167). Dr. John Sullivan, another treating orthopedist, diagnosed shoulder impingement syndrome and administered an injection of Kenalog. (T at 170). This injection only provided temporary relief. (T at 170-71).

Dr. Krause, the treating physician, assessed several physical problems, including

Arnold-Chiari malformation[6] and, as noted above, opined that Plaintiff could not work or lift with her symptoms. (T at 197).

The ALJ focused on the lack of a definitive diagnosis and/or clinical explanation for Plaintiff's pain.  Given the medical evidence (outlined above) supporting Plaintiff's claims of disabling pain, the ALJ was obliged to re-contact the treating physician to obtain further information concerning the impact of Plaintiff's pain on her functional abilities.  On remand, the ALJ should contact Dr. Krause to obtain this information and, in particular, to obtain a statement concerning the impact of Plaintiff's pain on her functional abilities during the relevant time period.  In addition, the ALJ should consider whether a consultative physical examination is warranted.  See 20 C.F.R. § 404.1512(f) (explaining that the ALJ will order consultative examinations "If the information [the Commissioner] need[s] is not readily available from the records of [the claimant's] medical treatment source, or [the Commissioner] [is] unable to seek clarification from [a] medical source").

In addition to the foregoing, the ALJ should seek further evidence concerning Plaintiff's mental limitations.  When explaining why she did not wish to appear for a hearing before the ALJ, Plaintiff stated that driving was difficult because of pain. (T at 63).  In addition, she described depressive symptoms and possible suicidal ideation. (T at 63).  Plaintiff participated in sporadic treatment for psychiatric symptoms related to stress and depression at the Samaritan Counseling Center. (T at 201-204).  Treatment notes from the

---

[6]"Arnold–Chiari malformation is a defect in which a part of the cerebellum ... is elongated and projects into the upper cervical canal." St. Louis v. Comm'r of Soc. Security, No. 10-CV-211, 2011 WL 2414513, at *1 n.1 (D. Vt. June 15, 2011).  Common symptoms of a type I Arnold-Chiari malformation "include severe headaches, neck pain, unsteady gait, poor fine motor skills, numbness and tingling in hands and feet, dizziness, difficulty swallowing, vision problems, and slurred speech." Knox v. Astrue. 660 F. Supp.2d 790, 798 (S.D.Tex 2009).

Samaritan Center described Plaintiff as "very angry," "anxious," and "consistently agitated, with exaggerated gestures and narrative." (T at 202-203). Plaintiff described feelings of hopelessness and an inability to control her life. (T at 202-203). Dr. Krause diagnosed anxiety and depression and noted that Plaintiff was dealing with "many family issues." (T at 197). The Social Security employee who interviewed Plaintiff in connection with her applications described her as "emotional and stressed." (T at 82).

The ALJ found "insufficient objective evidence/expert opinion/clinical findings" to support a conclusion that Plaintiff's mental/emotional impairment rose to the level of a "severe" impairment. (T at 15). In addition, the ALJ determined that Plaintiff had no non-exertional impairments and was able to perform the mental demands of her past relevant work as a flower sales clerk. (T at 18).

However, given the evidence in the record concerning Plaintiff's psychiatric difficulties, the ALJ was obliged to seek further development of the record in the form of a consultative psychiatric examination before making this assessment. See 20 C.F.R. § 404.1503(e) ("An initial determination ... where there is evidence which indicates the existence of a mental impairment, will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.").

For the foregoing reasons, this Court finds that remand is necessary for further development of the record. After the record has been expanded, the ALJ should revisit his RFC assessment and his conclusion that Plaintiff's psychiatric impairments did not rise to the level of a severe impairment.

**b.     Credibility**

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff alleged that she experienced constant severe pain in her right arm, an inability to sleep, and numbness in her right arm. (T at 85, 93, 96). She also described difficulties with stress and remembering details. (T at 99). Plaintiff's allegations were supported by Dr. Krause's assessment that she was disabled and unable to lift because of her symptoms. (T at 174, 197). As noted by the ALJ, Plaintiff has an excellent work history (T at 18, 68, 122), which entitles her to enhanced credibility. See Rivera v.

Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were only partially credible. (T at 18). The ALJ explained his decision by referencing the "lack of objective medical evidence to support the nature and extent of the claimant's alleged pain and limitations." (T at 18). However, for the reasons stated above, the ALJ was obliged to further develop the record before making this assessment. In particular, the ALJ should have re-contacted Dr. Krause for an assessment of Plaintiff's functional limitations and a further explanation of his conclusion that Plaintiff was disabled and unable to lift. Moreover, before discounting Plaintiff's allegations of disabling depression and mental/emotional impairments (which were supported by some evidence in the record), the ALJ should have obtained a consultative psychiatric examination. Upon remand and after further development of the record, the ALJ must revisit the question of Plaintiff's credibility.

### 3.  Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is

respectfully recommended that this case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion be denied, the decision of the Commissioner be reversed, and this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   July 27, 2011
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
July 27, 2011

Victor E. Bianchini
United States Magistrate Judge